# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | |
|---|---|
| JAMES POGUE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) C.A. No. 11563-VCG |
| | ) |
| HYBRID ENERGY, INC., | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

Date Submitted: July 7, 2016
Date Decided: August 5, 2016

Marcus E. Montejo and Samuel L. Closic, of PRICKETT, JONES & ELLIOTT, P.A., Wilmington, Delaware, *Attorneys for Plaintiff*.

John L. Reed, Ethan H. Townsend, and Harrison S. Carpenter, of DLA PIPER LLP (US), Wilmington, Delaware, *Attorneys for Defendant*.

GLASSCOCK, Vice Chancellor

This is a proceeding under 8 *Del. C.* § 220 that comes before the Court in a posture unique, I believe, in our case law. The Plaintiff, James Pogue, was an employee of the Defendant Hybrid Energy, Inc. ("Hybrid" or the "Company"). He alleges that, at the time he was hired in 2011, the Company issued to him a stock certificate representing one million shares of Hybrid common stock. Despite this fact, the record demonstrates that Hybrid, at the time, had *no* treasury shares available to distribute; its certificate of incorporation authorized the issuance of only *1,500* shares, which were all then outstanding, held by its principal, Thomas Lull. According to Pogue, the illusion that he was an owner of Hybrid stock was furthered by the payment of "dividends" in the years after 2011. Pogue was also represented on Hybrid's stock ledger as an owner of stock of the Company. The evidence in the record, however, demonstrates that the 2011 "stock issuance" was void and that Pogue's stock certificate is a nullity.

In this action, Pogue seeks books and records under Section 220 of the Delaware General Corporation Law ("DGCL"). The Company defends based on the fact that Pogue is not a stockholder.[1] Pogue concedes that the issuance was void,

---

[1] This Court has defined the useful Yiddish word "chutzpah" as "an audacious insolence; a mixture of nerve and gall." *Wagamon v. Dolan*, 2013 WL 1023884, at \*1 (Del. Ch. Mar. 15, 2013). The paradigm example often given is of a murder defendant, who has killed his mother and father, throwing himself on the mercy of the court as an orphan. Another is alleged here: a company that issues a void stock certificate to an employee to defraud him of his services, defending a books and records request on the ground that said employee is no stockholder.

but argues nonetheless that he is entitled to books and records under the statute on the ground that, where a defendant company maintains a stock ledger, a plaintiff's inclusion on that ledger is the *sole* determinant of stock-ownership status under Section 220; thus, Pogue, listed as a stockholder, *is* a stockholder for purposes of obtaining books and records.

For the reasons below, I find that inclusion on the stock ledger states a *prima facie*, but rebuttable, case that a plaintiff is a statutory stockholder of record; and that, here, the undisputed record rebuts that presumption, precluding Pogue from the relief he seeks. My reasoning is below. Before addressing that reasoning, it is important, to my mind, to state what this Memorandum Opinion is *not* about. It does not concern whether Pogue is entitled to relief under Section 205 of the DGCL.[2] It does not concern whether Pogue has an action sounding in fraud or contract, as the facts alleged in his complaint, if raised in a proper forum, would indicate. And, because Pogue has not sought such relief here, it does not address whether, under the facts pled, Hybrid should by estopped from denying Pogue's stockholder status. I address below only the narrow legal issue of whether inclusion of a plaintiff as a stockholder on a company's stock ledger irrebuttably demonstrates standing under

---

[2] Section 205 vests the Court of Chancery with exclusive jurisdiction over actions brought by, among others, "any record or beneficial holder of valid stock or putative stock," to "[d]etermine the validity of any corporate act or transaction and any stock, rights or options to acquire stock." 8 *Del. C.* § 205(a)(4).

2

Section 220, where the record nonetheless shows that he is not, in fact, a stockholder.

## I. BACKGROUND

### A. Factual Overview

The Defendant Company filed its initial Certificate of Incorporation on February 12, 2009, which authorized 1,500 shares of common stock.[3] On June 11, 2009, all 1,500 of those shares were issued to Hybrid's sole director, President, Chief Executor Officer, and Secretary—Thomas Lull—who continues to hold them.[4] The Company filed an Amended and Restated Certificate of Incorporation on January 7, 2015, which increased the total authorized shares to 160,000,000, including 150,000,000 shares of common stock and 10,000,000 shares of preferred stock.[5]

The Plaintiff, James Pogue, is a former employee of Hybrid Energy. He alleges that the Company purported to issue him 1,000,000 shares of common stock by certificate dated December 29, 2011, at a time when all of the Company's authorized shares—1,500 *in toto*—were held by Thomas Lull.[6] That void issuance, nonetheless, is represented on the Company's stock ledger.[7] The Plaintiff maintains that, since the purported issuance, the Company has treated him as a stockholder, by

---

[3] Def's Opening Br., Transmittal Aff. of Thomas R. Lull, Ex. A (Certificate of Incorporation of Hybrid Energy, Inc., dated February 12, 2009).

[4] *Id.* at Ex. B (Stock Certificate of Thomas R. Lull, dated June 11, 2009).

[5] *Id.* at Ex. C (Amended and Restated Certificate of Incorporation of Hybrid Energy, Inc., dated January 7, 2015).

[6] *Id.* at Ex. D (Stock Certificate of James Pogue, dated December 29, 2011).

[7] Pl's Answering Br., Transmittal Aff. of Samuel L. Closic, Esq., Ex. 3 (Hybrid Stock Ledger).

issuing him a revised stock certificate in February 2012, by paying him dividends on the shares, and by providing him with a Form 1099-DIV to be submitted in connection with his federal income tax return. The Company denies providing the form or paying any dividends on the shares, a matter not material to my decision here.[8]

### B. Procedural History

The Plaintiff filed this action, seeking books and records under Section 220 of the DGCL, on October 2, 2015, after the Company failed to respond to his written demand letter of August 18, 2015. The Company answered on November 2, 2015, asserting, among other defenses, that the Plaintiff lacked standing under Section 220. The Plaintiff sought discovery from Hybrid concerning the Company's standing defense, including requests for the Company's stock ledger and evidence of actions taken in reliance on the accuracy of the stock ledger, including the payment of dividends. After the Company refused to produce the requested documents, the Plaintiff filed a motion to compel on January 14, 2016. The Company, in turn, filed a motion for summary judgment on the standing issue on February 10, 2016. I granted Plaintiff's motion to compel on March 3, 2013. Following limited discovery, the parties completed briefing on Defendant's motion for summary

---

[8] For purposes of this Memorandum Opinion, I need not resolve this factual dispute. The Plaintiff has not advanced a theory of equitable estoppel, to which these facts might prove relevant.

4

judgment, and I heard oral argument on July 7, 2016. This Memorandum Opinion addresses Defendant's motion.

## II. ANALYSIS

The parties, for purposes of this motion, do not contest that the purported 2011 stock issuance to Pogue was void *ab initio*. The issue before me is simply whether, for purposes of deciding whether standing exists to pursue a Section 220 action, the Court is confined to looking to the stock ledger—on which Plaintiff appears—or whether the Court can look to the other evidence outside the stock ledger, which clearly demonstrates that the Plaintiff is not a stockholder of Hybrid.

I first turn to the statute itself. Section 220(b) provides that "[a]ny stockholder" has inspection rights, as defined.[9] "Stockholder," in turn, is defined at Section 220(a)(1) as "a holder of record of stock . . . or a person who is the beneficial owner of shares of such stock."[10] Where, as here, a plaintiff seeks inspection of records other than the stock ledger or list, the burden is on the plaintiff to "establish" that she "is a stockholder."[11] Here, the Plaintiff claims to be a record holder; the question is what evidence should be relied on to establish that status. The Plaintiff argues that it is sufficient to refer to the stock ledger, by which he is recognized as a stockholder. I agree. In a typical case, the stock ledger controls record-stockholder

---

[9] 8 *Del. C.* § 220(b).
[10] *Id.* § 220(a)(1)
[11] *Id.* § 220(c)(1).

status, and a stockholder may point to the stock ledger to show, *prima facie,* that she is in fact a holder of record. The Plaintiff here goes further, however, and argues that the stock ledger creates an *irrebuttable* presumption of ownership for purposes of obtaining books and records. That position I find unsupported in the language and purpose of the statute, and not dictated by our case law.

Section 220 confers on this Court the exclusive jurisdiction "to determine whether or not the person seeking inspection is entitled to the inspection sought."[12] It does not, implicitly or explicitly, limit the evidence that this Court may rely upon in making that determination. Importantly, before commencing an action for records, a plaintiff must make a demand upon the corporation, stating the "proper purpose" for which the records are sought.[13] The statute limits "proper purpose" to such a purpose that is "reasonably related to [the requesting party's] interest as a *stockholder*."[14] In an action such as this, following the demand, the burden is on the plaintiff to show not only that she is a stockholder, but that the inspection sought "is for a proper purpose," again, a purpose that reasonably relates to her interest *as a stockholder*.[15] This case, as pled, has equitable sympathy on the side of the Plaintiff, who allegedly was defrauded. But the rule advocated by the Plaintiff—that the

---

[12] *Id.* § 220(c).
[13] *Id.* § 220(b).
[14] *Id.* (emphasis added).
[15] *Id.*

6

Court, based on an erroneous stock ledger, must indulge the legal fiction of ownership, and thus standing under Section 220, despite clear evidence to the contrary supplied by the Defendant—would be nonsensical and inimical to the purpose of the statute. Again, that purpose, as the quoted language demonstrates, is to provide corporate records necessary to a stockholder's interests "as a stockholder."

Consider an individual who is listed on a stock ledger purely by typographical error; that individual would have no interest as a stockholder in the company. Any interest of the individual would be as a curious intermeddler, at best. To hold that, notwithstanding the fact that the defendant Company can demonstrate that the stock ledger lists that individual in error, the individual has standing to make a Section 220 demand, would be a nonsensical waste of litigants' and judicial resources; the individual could never show proper purpose, and any request would ultimately fail.[16] The Plaintiff here should fare no better. He received a void, allegedly fraudulent stock certificate. This gives him a chose-in-action, a contract or fraud claim against the issuer or its principal. It does not, however, make him a stockholder with an ownership interest in the corporation, and to find standing to vindicate such a non-

---

[16] At oral argument, the Plaintiff argued that his "proper purpose" is to enable him to "use the tools at hand to properly bring a 205 action" or to "pursue a breach of contract issue." Oral Argument Tr. 22:17–18, 20–21. Neither is a proper purpose related to Plaintiff's interest *as a stockholder*; both relate to an *individual* interest, for which the Plaintiff is not entitled to books and records under Section 220.

existent interest would not advance the purpose of the statute. I conclude, therefore, that inclusion on a stock ledger is *prima facie* evidence of stock ownership, but that, as here, the corporate defendant may rebut that presumption by clear and convincing evidence.

The Plaintiff, however, argues that the analysis above, whatever its other merits, is precluded by our Supreme Court's holding in *Rainbow Navigation, Inc. v. Pan Ocean Navigation, Inc.*[17] Of course, this Court, as inferior to the *Rainbow* court, is bound by the holdings of that court. *Rainbow*, however, does not address current Section 220, and given that its rationale is dependent on aspects of Sections 219 and 220 that have been materially changed by the legislature, I do not find it controlling here; nor does its rationale, persuasive in the context of those superseded statutory pronouncements, apply to Section 220 as currently constituted.

*Rainbow* involved a stockholder seeking records of a company that had failed to keep a stock ledger. There, the defendant company made an argument (the converse of that of the Defendant here) that since it had *failed* to keep a stock ledger, *none* of its stockholders could perfect inspection rights.[18] The defendant made that argument based on then-current language in Section 219(c) that, by its terms, applied to Section 220 as well: "The stock ledger shall be the only evidence as to who are

---

[17] 535 A.2d 1357 (Del. 1987).
[18] Compare *supra* note 1.

the stockholders entitled to examine the stock ledger, the list required by this section, *and the books of the corporation*" available via Section 220.[19] The *Rainbow* court found to the contrary; it noted that the right to inspection existed at common law and could only be limited by statute, that Section 220 explicitly gave the Court of Chancery the jurisdiction to determine whether plaintiffs were entitled to inspection, and that, therefore, notwithstanding the language of Section 219(c), the Court of Chancery had the authority to examine all pertinent evidence to determine standing where the stock ledger is blank. Any other reading of the statute, the Court found, would be absurd.[20]

I note that the holding of the *Rainbow* decision is not entirely clear to me. *Necessary* to the result there was only a finding that—the (now-superseded) language of Section 219(c) notwithstanding—this Court had jurisdiction to examine extrinsic evidence absent a stock ledger. The court went further, however, finding that this Court "may look to [extrinsic] evidence . . . [of] record stockholder status *only* where the corporation does not have a stock ledger or has a blank stock ledger."[21] The court then states that its holding is expressly "limited to situations in which the stock leger is blank or nonexistent"[22] Even if I were to find that *Rainbow*

---

[19] *Id.* at 1359.
[20] *Id.*
[21] *Id.* (emphasis added).
[22] *Id.*; *see Holtzman v. Gruen Holding Corp,* 1994 WL 444756, at \*2 (Del. Ch., Aug. 5, 1994) (decided after *Rainbow*, and noting that "there may be circumstances which would warrant this Court going behind a stock ledger" to determine standing under Section 220, but eschewing such

9

should be read to have permitted the Court of Chancery to examine evidence extrinsic to the stock ledger *only* where that document was blank or non-existent, *Rainbow* would not control here. That is because the *Rainbow* court relied on language in old Section 219(c), which has since been amended to remove the reference to book and records actions under Section 220.[23] Our courts are no longer constrained by the determination of the legislature, since repealed, that the stock ledger must control standing under Section 220.[24] Moreover, *Rainbow* applied a version of Section 220 under which standing was limited to record holders,[25] unlike the current version, which applies to both record and beneficial holders;[26] with respect to the latter, of course, determination of standing *requires* examination of evidence extrinsic to the stock ledger. For all these reasons, I find *Rainbow* neither controlling nor supportive of the Plaintiff's position here.

---

review under the facts of the case); *Kerkorian v. Western Air Lines, Inc.,* 253 A.2d 221, 224 (Del. Ch. 1969) (preceding *Rainbow,* and finding that the Court may "go beyond record title" in a Section 220 action). In its review of *Kerkorian*, the Supreme Court did not address the issue, finding it unnecessary to the holding below. *Western Air Lines, Inc. v. Kerkorian*, 254 A.2d 240, 242 (Del. 1969).

[23] Section 219(c) was amended in 2003 to remove the reference to standing to enforce a right to corporate books, as provided by Section 220. It now provides in its entirety that "[t]he stock ledger shall be the only evidence as to who are the stockholders entitled by this section to examine the list required by this section or to vote in person or by proxy at any meeting of stockholders."

[24] *See. id.*

[25] 8 *Del. C.* § 220 (1987) ("As used in this section, 'stockholder' means a stockholder of record.")

[26] 8 *Del. C.* § 220(a) ("As used in this section: (1) 'Stockholder' means a holder of record of stock in a stock corporation, or a person who is the beneficial owner of shares of such stock held either in a voting trust or by a nominee on behalf of such person.").

### III. CONCLUSION

Defendant's Motion for Summary Judgment is granted. An appropriate Order is attached.

**IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE**

JAMES POGUE,                    )
                                      )
           Plaintiff,         )
                                        )
      v.                    )  C.A. No. 11563-VCG
                                        )
HYBRID ENERGY, INC.,     )
                                      )
           Defendant.     )

## ORDER

AND NOW, this 5th day of August, 2016,

The Court having considered Defendant's Motion for Summary Judgment, and for the reasons set forth in the Memorandum Opinion dated August 5, 2016, IT IS HEREBY ORDERED that Defendant's motion is GRANTED.

SO ORDERED:


/s/ Sam Glasscock III

Vice Chancellor